[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 06, 2010
JOHN LEY
CLERK

_____

No. 09-12449

_____

D. C. Docket No. 07-00196-CV-3-EMT

BRICE BUILDING COMPANY, INC.,

Plaintiff-Appellee,

versus

CLARENDON AMERICA INSURANCE COMPANY,
d.b.a. Mercury Insurance Company,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(May 6, 2010)

Before BIRCH, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

We AFFIRM the judgment of the district court in all matters with the

exception of its ruling that Clarendon America Insurance Company ("Clarendon")

was not entitled to share the costs of Brice Building Company, Inc.'s ("Brice")

defense and indemnification with Amerisure Mutual Insurance Company

("Amerisure"), Brice's commercial general liability ("CGL") insurance provider.

With respect to that issue and for the reasons stated herein, we find that the district

court erred in its conclusion that Clarendon's excess coverage provision was

inapplicable to bar coverage for claims arising out of the death of Joseph Eddy,

who was killed when the vehicle he was driving rear-ended a delivery truck that

had been parked in the roadway adjacent to Brice's Preserve Place construction

site.

In addition to the coverage Brice maintained with Amerisure, Brice was

covered as an "additional insured" under one of its subcontractor's CGL policies

with Clarendon. That policy contained an "Other Insurance" clause, which

provided that "[t]his insurance is excess over any other insurance . . . [i]f the loss

arises out of the maintenance or use of aircraft, 'autos' or watercraft . . . ." Doc.

75, Exh. B. at 15. Brice's policy with Amerisure contained a virtually identical

"Excess Insurance" provision.[1] Under Florida law, "[w]hen two insurance policies

contain 'other insurance' clauses[,] the clauses are deemed mutually repugnant[,]

---

[1] Amerisure's "Excess Insurance" provision read: "This insurance is excess over: (1) Any of the other insurance . . . [i]f the loss arises out of the maintenance or use of aircraft, 'autos' or watercraft . . . ." Doc. 106, Exh. D at 68.

and both insurers share the loss on a pro rata basis in accordance with their policy limits." *Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co.*, 254 F.3d 987, 1005 (11th Cir. 2001) (quotation marks and citation omitted). The district court found that Clarendon's other insurance provision did not apply, and that its policy was therefore primary, because the loss in this case – Mr. Eddy's death – did not arise out of the maintenance or "use" of an automobile. As such, Clarendon was solely responsible for defending and indemnifying Brice in the underlying wrongful death lawsuit filed by Mr. Eddy's estate.[2] We disagree.

In *Underwriters at Lloyd's of London v. McCaul*, 949 So. 2d 1137 (Fla. Dist. Ct. App. 2007), the Florida appellate court held that a CGL policy's automobile exclusion, which excluded coverage for injuries "arising out of the ownership, maintenance, use or entrustment to others of any 'auto' owned or operated by any insured," applied where the loss occurred as a result of a collision where a car swerved off a roadway and struck the insured's van, which was parked on the side of the road while the insured's employees maintained the area. *Id.* at 1138. The trial court had determined that because the theory of liability stated in the

---

[2] The district court first rejected Clarendon's argument that it was entitled to share the costs of Brice's defense and indemnification with Amerisure as an untimely "policy defense." This was error. Clarendon did not rely on the other-insurance provision to deny coverage, but instead relied on it to establish its share of Brice's loss once coverage had been established. Clarendon thus had no obligation to raise the cost-sharing issue until the district court notified the parties that it intended to award Brice monetary damages.

complaint was the insured's alleged negligent failure to place traffic cones on the roadway to warn of the presence of the work and the vehicle, rather than the dangerous location of the van itself, Lloyd's was required to defend and indemnify the insured. *Id.* Reversing the trial court, the appellate court found that "[i]t [was] clear . . . as a matter of common sense and of a plain reading of the policy . . . that however the basis of the claim may have been creatively characterized by the plaintiffs, the exclusion precludes coverage as a matter of law." *Id.* The court reasoned that "the failure to warn of the danger created by the presence of a vehicle [i]s inseparable from the 'use' of the vehicle itself" and that it was "simply inconceivable that a collision with a motor vehicle may be deemed *not* to arise from its use or operation." *Id.* at 1139. Accordingly, "the insured's alleged liability arose from the use of its vehicle and thus [fell] within the pertinent exclusion." *Id.* at 1140. *See also Allstate Ins. Co. v. Safer*, 317 F. Supp. 2d 1345 (M.D. Fla. 2004) (CGL policy's auto exclusion barred coverage for injuries sustained in an accident that occurred because the insured's negligently parked truck had obscured the view of an intersection adjacent to the insured's property); *Alligator Enterprises, Inc. v. General Agents Ins. Co.*, 773 So. 2d 94, 95-96 (Fla. Dist. Ct. App. 2000) (injuries sustained when a vehicle collided with a tractor trailer that had been negligently parked on the roadway outside Alligator's

4

premises "[w]ithout question . . . arose out of the ownership, maintenance or use of Alligator's tractor and trailer," thus barring coverage under CGL policy's auto exclusion).

In light of the foregoing, it is clear under Florida law that a parked car is being "used" when another vehicle collides with it, regardless of the theory of liability alleged in the underlying complaint. Accordingly, we conclude that the accident in this case arose out of the "use" of an automobile and thus comes within the other insurance provision of Clarendon's CGL policy. Clarendon's and Amerisure's excess coverage provisions being mutually repugnant, both insurers must share pro-rata the costs of Brice's defense and indemnification. We therefore VACATE the judgment of the district court with respect to that issue and REMAND to the district court for a determination of Clarendon's pro-rata share of Brice's damages.

**AFFIRMED IN PART, VACATED IN PART, and REMANDED.**